1   LEWIS & LLEWELLYN LLP
    Marc R. Lewis (Bar No. 233306)
2   mlewis@lewisllewellyn.com
    Zachary Flood (Bar No. 312616)
3   zflood@lewisllewellyn.com
    601 Montgomery Street, Suite 2000
4   San Francisco, California 94111
    Telephone:    (415) 800-0590
5
    COHEN & GRESSER LLP
6   Douglas J. Pepe *(Pro Hac Vice Forthcoming)*
    dpepe@cohengresser.com
7   Benjamin Zhu *(Pro Hac Vice Forthcoming)*
    bzhu@cohengresser.com
8   800 Third Avenue
    New York, New York 10022
9   Telephone:    (212) 957-7600

10  Attorneys for Plaintiff
    SAMUEL BANKMAN-FRIED

11

12              UNITED STATES DISTRICT COURT

13            NORTHERN DISTRICT OF CALIFORNIA

14

| | |
|---|---|
| 15  SAMUEL BANKMAN-FRIED, an individual, | Case No. |
| 16                Plaintiff, | **COMPLAINT** |
| 17        v. | |
| 18  CONTINENTAL CASUALTY COMPANY, | |
| 19                Defendants. | |

20

21

22

23

24

25

26

27

28

1
COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

**COMPLAINT**

Plaintiff Samuel Bankman-Fried, by and through his undersigned attorneys, as and for his Complaint against defendant Continental Casualty Company ("CNA"), hereby alleges as follows:

**INTRODUCTION**

1.      Mr. Bankman-Fried is a defendant in an ongoing, complex criminal trial relating to alleged conduct related to Paper Bird Inc. and its subsidiary FTX Trading Ltd. ("FTX"). A second trial against Mr. Bankman-Fried is scheduled for March 2024, and he is further involved in more than a dozen civil and regulatory actions relating to FTX.

2.      CNA is Mr. Bankman-Fried's excess insurer under a directors and officers insurance policy, Number 652453460 (the "CNA Policy," attached as Exhibit A), for Paper Bird Inc. and related companies. The CNA Policy follows form to a primary policy, Number B0146ERINT2200905 (the "Policy," attached as Exhibit B), issued by Certain Underwriters at Lloyd's, London ("Beazley").

3.      The Policy explicitly requires CNA to pay defense costs incurred by the insureds, including Mr. Bankman-Fried, on a current basis, without regard to whether payments may exhaust the policy limit. The Policy directs that defense costs must be paid "on a current basis but no less than once every sixty (60) days" and advises all insureds, in all capitals at the top of Declarations, that "AMOUNTS INCURRED AS POLICY COSTS SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY." (Ex. B at 4 & ¶ IV.D) (emphasis added).

4.      The two carriers underlying CNA in the insurance tower (including Beazley, the primary insurer that drafted the Policy) have acknowledged the Policy's unambiguous requirements and paid out defense costs on a current basis as incurred.

5.      By contrast, CNA has refused to comply with its contractual mandate and failed to pay Mr. Bankman-Fried's defense costs on a current basis, despite numerous requests by Mr. Bankman-Fried.

6.      California law, which governs the Policy, requires insurers to strictly and promptly comply with the unambiguous terms of an insurance contract. CNA's misconduct breaches both its clear contractual obligations and the implied covenant of good faith and fair dealing imposed on all

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

1   insurers.

2      7.     Mr. Bankman-Fried brings this action to hold CNA responsible for its contractual

3   breach and bad faith conduct.

4                         **PARTIES**

5      8.     Plaintiff Samuel Bankman-Fried is a citizen of California.

6      9.     Defendant CNA is a corporation organized under the laws of Illinois, with its

7   principal place of business in Illinois.

8                 **JURISDICTION AND VENUE**

9      10.     This Court has personal jurisdiction over CNA pursuant to the Policy's Service of

10   Suit clause, which is incorporated by the CNA Policy and under which CNA agrees to "submit to

11   the jurisdiction of any court of competent jurisdiction within the United States" in the event it failed

12   to "pay any amount claimed to be due hereunder."  (Ex. B ¶ XII).

13      11.     This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(a)(1).

14   For diversity purposes, Mr. Bankman-Fried is deemed to be a citizen of California, CNA is a citizen

15   of Illinois, and the  amount in controversy exceeds $75,000.

16      12.     Venue is properly laid in this District under 28 U.S.C. § 1391(b)(1) and (b)(2)

17   because (a) CNA is deemed a resident of this District pursuant 28 U.S.C. § 1391(c)(2) and the

18   Policy's Service of Suit clause and (b) a substantial part of the events or omissions giving rise to the

19   claim occurred in this District.

20                         **FACTS**

21   **A.**     **The Relevant Policies.**

22      13.     The CNA Policy is the second-layer excess policy in the D&O insurance tower

23   relating to Paper Bird Inc. and related companies in effect from August 4, 2022, until August 4,

24   2023.  The CNA Policy provides a $5 million limit of liability, which attaches upon exhaustion of

25   the $10 million in aggregate limits of the underlying insurance.

26      14.     Except for certain terms not relevant here, the CNA Policy incorporates all terms,

27   conditions, and limitations of the $5 million primary Policy issued by Beazley.

28

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

1    15.    The first layer of excess policies in the tower, with a $5 million limit of liability, was

2    issued by QBE Insurance Company ("QBE").

3    16.    The Policy explicitly covers defense costs and expenses.  It requires the insurer to

4    "pay on behalf of" Insured Persons, among other things, "Loss resulting from any Claim or

5    Investigation."  (Ex. B at 7 ¶ I).  "Loss" includes "Policy Costs."  (Id. at 24).  "Policy Costs," in

6    turn, include "Costs, Charges and Expenses" (id. at 26), which is defined to mean, among other

7    things: "reasonable fees, costs, charges and expenses incurred by the Insured Persons in defense,

8    settlement, investigation and appeal of any Claim or in responding to any Investigation," including

9    "reasonable attorneys and expert fees" incurred by an insured (id. at 19-20).

10    17.    The Policy mandates that defense costs must be paid on a current basis even if doing

11    so would exhaust the limit of liability that would otherwise be available for indemnity or defense

12    cost claims in the future.  Section IV.D of the Policy requires the insurer to "advance or pay Policy

13    Costs on a current basis but no less than once every sixty (60) days."  (Ex. B at 10 ¶ IV.D).  The

14    Policy further makes clear in its first Declarations page that "AMOUNTS INCURRED AS POLICY

15    COSTS SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY."  (Id. at 4).  The

16    CNA Policy separately emphasizes that "[i]f the Limit of Liability under this Policy is exhausted by

17    payment of loss, the Insurer's obligations shall be deemed completely fulfilled and extinguished."

18    (Ex. A ¶ II).

19    18.    While the Policy contains a limited number of exclusions based on fraudulent,

20    criminal, and similar acts, the Policy expressly carves out "Costs, Charges and Expenses" — which

21    include defense costs — from those exclusions.  (Ex. B at 8 ¶ III.B).  The Policy contains no

22    provision contemplating claw back or reimbursement of defense cost payments.

23    **B.    The Litigations.**

24    19.    Mr. Bankman-Fried is an "Insured Person" under the Policy.

25    20.    Paper Bird Inc., on behalf all insureds, has provided notice to CNA and other insurers

26    of various covered matters related to FTX, including matters involving claims against Mr.

27    Bankman-Fried, and Mr. Bankman-Fried has separately notified insurers on his own behalf.

28

COMPLAINT
CASE NO.

LEWIS + LLEWELLYN LLP

21.     Among these proceedings is a criminal indictment against Mr. Bankman-Fried pending before the Southern District of New York.

22.     In addition to the criminal proceeding, Mr. Bankman-Fried has recently been a defendant, respondent, or subpoena recipient in various civil, regulatory, and bankruptcy adversary proceedings covered by the Policy.

**C.      CNA Breaches Its Obligations.**

23.     Mr. Bankman-Fried has sought reimbursement of his defense costs from relevant insurers, including CNA.

24.     Beazley, the primary insurer and the Policy's drafter, implemented a process under which it reviewed invoices submitted by the insureds, evaluated coverage of those invoices, and made payments until the covered defense costs exceeded the remaining aggregate policy limit, at which point Beazley paid out each insured's covered defense costs proportionally up to Beazley's limit of liability.

25.     QBE subsequently employed a similar procedure for processing and paying out defense cost claims under its first-layer excess policy.

26.     The Beazley and QBE policies have been exhausted, triggering coverage under the CNA Policy.

27.     In contrast to Beazley and QBE, CNA has failed to follow the Policy's clear terms, despite numerous requests by Mr. Bankman-Fried.  CNA has refused to pay Mr. Bankman-Fried's covered expenses on a current basis, as the Policy requires, forcing Mr. Bankman-Fried to bring the present action.

**CAUSES OF ACTION**

**COUNT 1.  BREACH OF CONTRACT**

28.     Mr. Bankman-Fried repeats and realleges the allegations set forth in paragraphs 1 through 27.

29.     The Policy's express terms, incorporated in the CNA Policy, require CNA to pay Mr. Bankman-Fried's defense costs on a "current basis."

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

30.     CNA's coverage obligations were triggered upon exhaustion of the underlying Beazley and QBE policies.

31.     Mr. Bankman-Fried has submitted invoices of defense costs incurred to CNA for reimbursement and otherwise complied with his obligations under the Policy and the CNA Policy.

32.     CNA has unjustifiably failed to make timely payment on Mr. Bankman-Fried's claims as required by the Policy.

33.     Accordingly, CNA has breached its contractual duties and obligations to Mr. Bankman-Fried.

34.     CNA's breaches of the Policy and the CNA Policy have caused, and threaten to cause, substantial and irreparable harm to Mr. Bankman-Fried for which there is no adequate remedy at law, including, but not limited to, the deprivation of Mr. Bankman-Fried's bargained-for coverage rights and the impairment of Mr. Bankman-Fried's defense against the numerous criminal and civil claims asserted against him.

35.     CNA's breaches of the Policy and the CNA Policy have also caused, and threaten to cause, Mr. Bankman-Fried to incur substantial monetary damages in an amount to be proven at trial but, in all events, in excess of $75,000 exclusive of interest and costs, including, but not limited to, legal costs (including attorneys' fees) associated with efforts to obtain his bargained-for coverage rights (including the costs incurred in connection with this action) and defense costs that Mr. Bankman-Fried has been or may be forced to bear out-of-pocket in defending against the numerous criminal and civil claims asserted against him.

36.     Mr. Bankman-Fried is entitled to preliminary and permanent injunctive relief enjoining CNA from violating, and directing CNA to specifically perform, its contractual obligation to pay Mr. Bankman-Fried's defense costs on a current basis, in accordance with the express terms of the Policy and the CNA Policy.

37.     Mr. Bankman-Fried is also entitled to compensatory, consequential, and special damages suffered by him as a result of CNA's breach of contract, including attorneys' fees incurred by Mr. Bankman-Fried in seeking to compel CNA's compliance with its obligations, in an amount to be determined at trial but in all events in excess of $75,000 exclusive of interest and costs.

6

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

## COUNT 2.  INSURANCE BAD FAITH

38.	Mr. Bankman-Fried repeats and realleges the allegations set forth in paragraphs 1 through 37.

39.	Under California law, an insured may assert a bad faith claim against an insurer based on a breach of the implied covenant of good faith and fair dealing, which exists to assure that insurers make prompt payment of claims to insureds.

40.	CNA has engaged in bad faith conduct and breached the implied covenant of good faith and fair dealing by, among other things, unreasonably and in bad faith delaying and/or denying defense cost payments due under the Policy and the CNA Policy, despite the clear policy language and numerous requests by Mr. Bankman-Fried.

41.	In failing to discharge its obligations fairly and in good faith, CNA improperly placed its own pecuniary interests over those of Mr. Bankman-Fried.

42.	CNA's breaches of the implied covenant of good faith and fair leading have caused, and threaten to cause, substantial and irreparable harm to Mr. Bankman-Fried for which there is no adequate remedy at law, including, but not limited to, the deprivation of Mr. Bankman-Fried's bargained-for coverage rights and the impairment of Mr. Bankman-Fried's defense against the numerous criminal and civil claims asserted against him.

43.	CNA's breaches of the implied covenant of good faith and fair leading have also caused, and threaten to cause, Mr. Bankman-Fried to incur substantial monetary damages in an amount to be proven at trial but, in all events, in excess of $75,000 exclusive of interest and costs, including, but not limited to, legal costs (including attorneys' fees) associated with efforts to obtain his bargained-for coverage rights (including the costs incurred in connection with this action) and defense costs that Mr. Bankman-Fried has been or may be forced to bear out-of-pocket in defending against the numerous criminal and civil claims asserted against him.

44.	Mr. Bankman-Fried is entitled to preliminary and permanent injunctive relief enjoining CNA from its bad faith conduct and directing CNA to discharge its duties to Mr. Bankman-Fried in good faith, including by complying with its contractual obligation to pay Mr. Bankman-Fried's defense costs on a current basis, in accordance with the express terms of the

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

1  Policy and the CNA Policy.

2          45.     Mr. Bankman-Fried is also entitled to compensatory, consequential, and special

3  damages suffered by him as a result of CNA's bad faith conduct, including attorneys' fees incurred

4  by Mr. Bankman-Fried in seeking to compel CNA's compliance with its obligations, in an amount

5  to be determined at trial but in all events in excess of $75,000 exclusive of interest and costs.

6          46.     Because CNA acted wantonly, oppressively, with malice, and/or willfully and with

7  want of care that demonstrates a conscious indifference to the consequences of its actions, Mr.

8  Bankman-Fried is entitled to an award of punitive damages against CNA.

9                          **COUNT III.  DECLARATORY JUDGMENT**

10          47.     Mr. Bankman-Fried repeats and realleges the allegations set forth in paragraphs 1

11  through 46.

12          48.     In light CNA's continued refusal to comply with its explicit and unambiguous

13  contractual obligations, there is an actual and justiciable case or controversy under the Declaratory

14  Judgment Act, 28 U.S.C. § 2201-2202, between Mr. Bankman-Fried and CNA that warrants and is

15  ripe for declaratory relief.

16          49.     Mr. Bankman-Fried requests a judicial declaration that CNA has a duty under the

17  Policy and the CNA Policy to pay Mr. Bankman-Fried's defense costs on a current basis, in

18  accordance with the express terms of the policies.

19                                  **PRAYER FOR RELIEF**

20          1.      WHEREFORE, Mr. Bankman-Fried respectfully request that this Court enter

21  judgment as follows:

22          2.      Preliminarily and permanently enjoining CNA from violating, and directing CNA to

23  specifically perform, its contractual obligation to pay Mr. Bankman-Fried's defense costs on a

24  current basis, in accordance with the express terms of the Policy and the CNA Policy;

25          3.      Preliminarily and permanently enjoining CNA from its bad faith conduct and

26  directing CNA to discharge its duties to Mr. Bankman-Fried in good faith, including by complying

27  with its contractual obligation to pay Mr. Bankman-Fried's defense costs on a current basis, in

28  accordance with the express terms of the Policy and the CNA Policy;

8

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP

4. Awarding Mr. Bankman-Fried all compensatory, consequential, and special damages suffered by him as a result of CNA's breach of contract, including attorneys' fees incurred by Mr. Bankman-Fried in seeking to compel CNA's compliance with its obligations, in an amount to be determined at trial;

5. Awarding Mr. Bankman-Fried all compensatory, consequential, and special damages suffered by him as a result of CNA's bad faith conduct, including attorneys' fees incurred by Mr. Bankman-Fried in seeking to compel CNA's compliance with its obligations, as well as punitive damages warranted by CNA's bad faith conduct, in an amount to be determined at trial;

6. Declaring that CNA has a duty under the Policy and the CNA Policy to pay Mr. Bankman-Fried's defense costs on a current basis, in accordance with the express terms of the policies;

7. Awarding Mr. Bankman-Fried all applicable costs, attorneys' fees, and prejudgment interest; and

8. Awarding Mr. Bankman-Fried such other and further relief as the Court deems just and proper.


Dated: October 2, 2023                    LEWIS  LLEWELLYN LLP


                                          By: _____
                                              Marc R. Lewis
                                              Zachary Flood

                                          COHEN & GRESSER LLP

                                              Douglas J. Pepe *(Pro Hac Vice Forthcoming)*
                                              Benjamin Zhu *(Pro Hac Vice Forthcoming)*

                                          Attorneys for Plaintiff
                                          SAMUEL BANKMAN-FRIED

COMPLAINT
CASE NO.

LEWIS +
LLEWELLYN
LLP