# Exhibit B

**Paragon International**
**Insurance Brokers**
**140 Leadenhall Street**
**London EC3V 4QT**

Telephone
+44 (0)20 7280 8200
Facsimile
+44 (0)20 7280 8270

Website
www.paragonbrokers.com
Email
info@paragonbrokers.com



**EDGEWOOD PARTNERS INSURANCE CENTER**
One California Street
Suite 400
San Francisco
California 94111
United States of America

Our Reference:   B0146ERINT2200905

Date:  5th August 2022

**Insured: Paper Bird Inc.**

Further to your instructions to bind coverage we have effected insurance in accordance with the attached contract.

Please examine this contract carefully and notify us immediately if it is incorrect, does not meet your requirements, or if the insurer(s) is / are unacceptable.

**Duty to Disclose:**

The insurance cover is based on the information you provided to us and on which we and the insurer(s) have relied.  If you have not provided to us all material information or you discover that the information you have provided is inaccurate, please advise us immediately in order that we may seek revalidation of terms with the insurer(s).

We take this opportunity to remind you that you have a duty to disclose all information which a) is material to the coverage requirements, b) might influence the insurer(s) in deciding whether or not to accept your business, c) might affect which terms and conditions the insurer(s) impose, or d) might affect the premium the insurer(s) charge. This duty to disclose is an ongoing responsibility for the duration of the contract and failure to make such disclosure may allow the insurer(s) to cancel the policy, avoid a claim or even avoid the contract.

**Premium Payment Terms:**

We draw your attention to the premium payment terms.  Payment of the premium is a condition of the contract. If the insurer(s) have imposed a payment warranty you must make sure that the premium is paid to us early enough to give us sufficient time to pay the insurer(s).  Failure to pay the premium or to meet a payment warranty may enable the insurer(s) to avoid the contract.

**Claims:**

In the event of any claim or circumstance that might lead to a claim, please follow the instructions in the attached contract.   If you have any questions relating to claims or doubts as to what constitutes a circumstance then please contact Simon Witham on +44 (0)20 7280 8227 or swoitham@paragonbrokers.com

Should you have any questions please feel free to contact us.

Yours sincerely,

**Director / Authorised Signatory**

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.



**PARAGON INTERNATIONAL INSURANCE BROKERS LIMITED**

**CONTRACT OF INSURANCE**

**Unique Market Reference:  B0146 ERINT2200905**

Thank you for choosing Paragon International Insurance Brokers Limited for your Insurance requirements.

This document contains the full terms and conditions of your Insurance. It is a legal document that you must read to ensure that you understand what is covered and what is excluded by your Insurance.

If you have any questions or concerns please contact us; we would be happy to hear from you.

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.



# Important Information
(Please Read Carefully)

## Material Facts

All material facts must be disclosed to us.  Failure to do so may affect your rights under this insurance.  A material fact is a fact likely to influence an insurer in the acceptance or assessment of this Insurance. If you are uncertain whether a fact is 'material', then for your own protection it should be disclosed to us so that we can advise you.

## Policy Terms

The coverage afforded by this insurance is subject to all the terms, conditions and exclusions contained in the attached contract.  You need to review this contract to make sure it accurately reflects the coverage that you require. If you have any questions or concerns about this insurance, you should first contact us at the address set out below.

## Subjectivities

If this contract contains subjectivities then you must take the necessary steps to provide the information requested by insurers and / or comply with their instructions.  Failure to comply with the subjectivities may limit or restrict some, or all, of the coverage under this insurance.  In some instances insurers may be able to avoid the contract.

## Our Services

We are committed to providing you with a high quality service, which we expect to maintain throughout the duration of the policy.  In order for you to appreciate this level of service we ask that in the first instance you carefully read through this document to ensure that you understand the extent of the coverage provided, the terms, conditions and exclusions that apply. In particular please note what is required of you if and when you become aware of a claim, or a circumstance which may give rise to a claim, being made against you.

## Contact Address:

Paragon International Insurance Brokers Ltd.,

140, Leadenhall Street,

London,

EC3V 4QT

**Tel:**      020 7280 8200

**Fax:**      020 7280 8270

**Email:**   info@paragonbrokers.com

.

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.

**PARAGON INTERNATIONAL INSURANCE BROKERS LTD**.

SLIP NUMBER:   B0146ERINT2200905                                                                    PAGE 1 OF 5

**RISK DETAILS:**

UNIQUE MARKET
REFERENCE:                 B0146ERINT2200905

TYPE:                            PRIMARY CLAIMS MADE DIRECTORS AND OFFICERS LIABILITY INSURANCE.

PARENT COMPANY:      **PAPER BIRD INC.**

PRINCIPAL
ADDRESS:                     101 Second Street, Ste 200
                                   San Francisco
                                   California 94105
                                   United States of America

POLICY PERIOD:           From:   4 August 2022
                                   To:      4 August 2023

                                   Both days at 12.01 a.m. Local Time at the Principal Address stated above.

INTEREST:                    Directors and Officers Liability as more fully defined in the wording.

LIMIT OF LIABILITY:      **USD5,000,000**            in the aggregate for the Policy Period, but sublimited to:

                                   **USD250,000**               in the aggregate for the Policy Period for all Mitigation Costs.

                                   Such Sublimit of Liability shall be part of and not in addition to the overall Limit of
                                   Liability stated above.

TERRITORIAL
SCOPE:                        Worldwide, as per policy wording.

CONDITIONS:              1.   Policy wording: Advanced Armour Boardroom Protection (amended) wording plus
                                        amendments detailed herein.
                                  2.   12 months Optional Extension Period at 150% Additional Premium (as per Item E
                                        of the declarations.
                                  3.   Predetermined Run-Off Period:
                                        36 months at premium to be determined by Underwriters at time of Corporate
                                        Takeover
                                        72 months at premium to be determined by Underwriters at time of Corporate
                                        Takeover
                                  4.   Notifications pursuant to Clause VI shall be given to:  Beazley Claims Services,
                                        30 Batterson Park Road, Farmington, Connecticut 06032, United States of
                                        America or claims@beazley.com (with copy to claims@paragonbrokers.com)
                                  5.   Inquiry Coverage Date:  4 August 2021
                                  6.   Service of Suit Nominee:  Lloyd's America, Inc., Attention: Legal Department, 280
                                        Park Avenue, East Tower, 25th Floor, New York, New York 10017, United States
                                        of America
                                  7.   Prior and Pending Litigation Date:  4 August 2021
                                  8.   NMA45 (amended) New Short Rate Cancellation Table Endorsement
                                  9.   Special Cancellation Clause
                                  10.  Sanction Limitation and Exclusion Clause
                                  11.  FTX - Offering/Listing of Securities Exclusion with Roadshow Carveback

**PARAGON INTERNATIONAL INSURANCE BROKERS LTD.**

12. West Realm Shires Services Inc. Exclusion
13. Amended Insolvency Extension Period Endorsement


NOTICES:                    1.  LMA9098B California Surplus Lines Notice
                            2.  LMA9030 California Surplus Lines Notice
                            3.  LMA9185 (amended) Policyholder Disclosure Notice of Terrorism Insurance
                                Coverage (USD1.00 allocated premium)


SUBJECTIVITIES:            None


CHOICE OF LAW
AND JURISDICTION
(DISPUTES CLAUSE):         Choice of Law: Status of California, as per Choice of Law Clause
                           Jurisdiction: United States of America, as per Service of Suit Clause


PREMIUM:                   **USD500,000**  (100%) for the Policy Period plus taxes as applicable.


PREMIUM
PAYMENT TERMS:             45 Day Premium Payment Warranty


TAXES PAYABLE
BY ASSURED AND
ADMINISTERED BY
INSURERS:                  None.


RECORDING,
TRANSMITTING &
STORING
INFORMATION:               Paragon International Insurance Brokers Ltd will maintain risk and claims data,
                           information and documents, which may be held on paper or electronically.


INSURER
CONTRACT
DOCUMENTATION:             This contract documentation details the contract terms entered into by (re)insurer(s)
                           and constituted the contract document. Any further documentation changing this
                           contract agreed in accordance with the contract change provisions set out in this
                           contract shall form the evidence of such change.

                           This contract is subject to US state surplus lines requirements. It is the responsibility of
                           the surplus lines broker to affix a surplus lines notice to the contract document before it
                           is provided to the insured. In the event that the surplus lines notice is not affixed to the
                           contract document the insured should contact the surplus lines broker.

**PARAGON INTERNATIONAL INSURANCE BROKERS LTD**.

SLIP NUMBER:   B0146ERINT2200905                                                                 PAGE 3 OF 5

<u>**INFORMATION**</u>

Electronic submission comprising the following attachments:

FDM AML CFT Policy v1.0 – FINAL
FTX Trading Ltd Financial Statements YE 2021 – FINAL
FTX Trading Ltd – Summarised Financial Results Q1 2022
FTX Trading Ltd Summary Capitalization Table, 06.07.2022
Organisation Chart

**PARAGON INTERNATIONAL INSURANCE BROKERS LTD**.

## SECURITY DETAILS

INSURERS
LIABILITY:                    **(RE) INSURERS LIABILITY SEVERAL NOT JOINT**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten.  A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer.  Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp.  This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together).  The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed").  In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together).  A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line".  The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333


ORDER HEREON:          100% of 100%


BASIS OF
WRITTEN LINES:           Percentage of Whole

**PARAGON INTERNATIONAL INSURANCE BROKERS LTD**.

SLIP NUMBER:    B0146ERINT2200905                                                                                          PAGE 5 OF 5

SIGNING
PROVISIONS:                     In the event that the written lines hereon exceed 100% of the order, any lines written
                                "to stand" will be allocated in full and all other lines will be signed down in equal
                                proportions so that the aggregate signed lines are equal to 100% of the order without
                                further agreement of any of the (re)insurers.

                                However:

                                a)   in the event that the placement of the order is not completed by the
                                     commencement date of the period of insurance then all lines written by that date
                                     will be signed in full;

                                b)   the signed lines resulting from the application of the above provisions can be
                                     varied, before or after the commencement date of the period of insurance, by the
                                     documented agreement of the (re)insured and all (re)insurers whose lines are to
                                     be varied.  The variation to the contracts will take effect only when all such
                                     (re)insurers have agreed, with the resulting variation in signed lines commencing
                                     from the date set out in that agreement.

MODE OF
EXECUTION:                      This contract and any changes to it may be executed by:

                                a.   electronic signature technology employing computer software and a digital
                                     signature or digitiser pen pad to capture a person's handwritten signature in such
                                     a manner that the signature is unique to the person signing, is under the sole
                                     control of the person signing, is capable of verification to authenticate the
                                     signature and is linked to the document signed in such a manner that if the data
                                     is changed, such signature is invalidated;

                                b.   a unique authorisation provided via a secure electronic trading platform

                                c.   a timed and dated authorisation provided via an electronic message/system;

                                d.   an exchange of facsimile/scanned copies showing the original written ink
                                     signature of paper documents;

                                e.   an original written ink signature of paper documents (or a true representation of a
                                     signature, such as a rubber stamp).;

                                The use of any one or a combination of these methods of execution shall constitute a
                                legally binding and valid signing of this contract.  This contract may be executed in
                                one or more of the above counterparts, each of which, when duly executed, shall be
                                deemed an original.



**CALIFORNIA SURPLUS LINES NOTICE**

**IMPORTANT NOTICE**

1.  The insurance policy that you have purchased is being issued by an insurer that is not licensed by the State of California. These companies are called "nonadmitted" or "surplus line" insurers.

2.  The insurer is not subject to the financial solvency regulation and enforcement that apply to California licensed insurers.

3.  The insurer does not participate in any of the insurance guarantee funds created by California law. Therefore, these funds will not pay your claims or protect your assets if the insurer becomes insolvent and is unable to make payments as promised.

4.  The insurer should be licensed either as a foreign insurer in another state in the United States or as a non-United States (alien) insurer. You should ask questions of your insurance agent, broker, or "surplus line" broker or contact the California Department of Insurance at the toll-free number 1-800- 927-4357 or internet website www.insurance.ca.gov. Ask whether or not the insurer is licensed as a foreign or non-United States (alien) insurer and for additional information about the insurer. You may also visit the NAIC's internet website at www.naic.org. The NAIC – the National Association of Insurance Commissioners – is the regulatory support organization created and governed by the chief insurance regulators in the United States.

5.  Foreign insurers should be licensed by a state in the United States and you may contact that state's department of insurance to obtain more information about that insurer. You can find a link to each state from the NAIC internet website: https://naic.org/state_web_map.htm.

6.  For non-United States (alien) insurers, the insurer should be licensed by a country outside of the United States and should be on the NAIC's International Insurers Department (IID) listing of approved nonadmitted non-United States insurers. Ask your agent, broker, or "surplus line" broker to obtain more information about that insurer.

7.  California maintains a "List of Approved Surplus Line Insurers (LASLI)." Ask your agent or broker if the insurer is on that list, or view that list at the internet website of the California Department of Insurance: www.insurance.ca.gov/01-consumers/120-company/07-lasli/lasli.cfm.

8.  If you, as the applicant, required that the insurance policy you have purchased be effective immediately, either because existing coverage was going to lapse within two business days or because you were required to have coverage within two business days, and you did not receive this disclosure form and a request for your signature until after coverage became effective, you have the right to cancel this policy within five days of receiving this disclosure. If you cancel coverage, the premium will be prorated and any broker's fee charged for this insurance will be returned to you.

D-2 (Effective January 1, 2020)

LMA9098B
10 December 2019



**CALIFORNIA SURPLUS LINES NOTICE**

This insurance is issued pursuant to the California Insurance Code, Sections 1760 through 1780, and is placed in an insurer or insurers not holding a Certificate of Authority from or regulated by the California Insurance Commissioner.

LMA9030
01 September 2013



This contract is subject to US state surplus lines requirements. It is the responsibility of the surplus lines broker to affix a surplus lines notice to the contract document before it is provided to the insured. In the event that the surplus lines notice is not affixed to the contract document the insured should contact the surplus lines broker.



## DECLARATIONS

## ARMOUR BOARDROOM PROTECTION

THIS IS A CLAIMS MADE AND REPORTED POLICY. SUBJECT TO ITS TERMS, THIS POLICY APPLIES ONLY TO ANY **CLAIM** FIRST MADE, ANY **INVESTIGATION** FIRST COMMENCED AND ANY **INQUIRY** FIRST REPORTED DURING THE **POLICY PERIOD** PROVIDED SUCH **CLAIM** OR **INVESTIGATION** IS REPORTED TO UNDERWRITERS IN ACCORDANCE WITH THE TERMS OF CLAUSE VI.

AMOUNTS INCURRED AS **POLICY COSTS** SHALL REDUCE AND MAY EXHAUST THE LIMIT OF LIABILITY. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY UNDERWRITERS TO DEFEND ANY OF THE **INSURED PERSONS**.  PLEASE READ THIS POLICY CAREFULLY.

These Declarations along with the **Application** and the Policy with endorsements shall constitute the contract between the **Insured Persons** and Underwriters.

**Policy No:**       B0146ERINT2200905

**Item A.**     **Parent Company:**

　　　　Paper Bird Inc.

**Principal Address:**

101 Second Street, Ste 200
San Francisco
California 94105
United States of America

**Item B.**     **Policy Period:**

**From:**   4 August 2022

**To:**   4 August 2023

Both days 12.01 a.m. Local Time at the Principal Address stated in Item A.



Item C.      **Limit of Liability:**

    **USD5,000,000**   in the aggregate for the **Policy Period**, but sub-limited to:

    **USD250,000**    in the aggregate for the **Policy Period** for all **Mitigation Costs**

    such sub-limit shall be part of, and not in addition to, the aggregate limit for the **Policy Period** shown above

Item D.      Premium:    **USD500,000** (100%) for the **Policy Period** plus taxes as applicable

Item E.      1.   Premium for **Optional Extension Period**:    150% of the total premium as provided in Clause IX.A

    2.   Length of **Optional Extension Period**:    12 months

Item F.      1.   Premium for **Predetermined Run-Off Period**:    premium to be determined by Underwriters at time of Corporate Takeover for 36 months, or

    premium to be determined by Underwriters at time of Corporate Takeover for 72 months

    2.   Length of **Predetermined Run-Off Period**:    36 months, or

    72 months

Item G.      **Notification pursuant to Clause VI. shall be given to:**

Beazley Claims Services, 30 Batterson Park Road, Farmington, Connecticut 06032, United States of America

or

claims@beazley.com (with copy to claims@paragonbrokers.com )

Item H.      **Inquiry** Coverage Date**:**

4 August 2021

Item I.      **Service of process in any suit shall be made upon:**

Lloyd's America, Inc., Attention: Legal Department, 280 Park Avenue, East Tower, 25th Floor, New York, New York 10017, United States of America



**Item J.**     **Choice of Law:**

State of California, United States of America

**Item K.**     **Prior and Pending Litigation Date:**

4 August 2021

**Dated in
London:**     3rd August 2022



**ARMOUR BOARDROOM PROTECTION - 2018**

In consideration of the payment of the premium and subject to all of the provisions of this Policy, Underwriters and the **Insured Persons** agree as follows:

**I.      INSURING CLAUSE**

Underwriters shall pay on behalf of the **Insured Persons**:

A.    **Loss** resulting from any **Claim** or **Investigation**;

B.    **Inquiry Costs** resulting from any **Inquiry**; or

C.    **Mitigation Costs**,

except to the extent that such **Loss**, including any **Inquiry Costs**, **Mitigation Costs**, is paid as indemnification by the **Company** or any **Outside Entity**, subject to Clause II.B.

This Policy is intended to protect solely the **Insured Persons**. Under no circumstances shall this Policy provide coverage for any **Company**, **Outside Entity** or any other entity.

**II.     FAILURE OR REFUSAL OF INDEMNIFICATION**

In the event that the **Company** or any **Outside Entity** is required or permitted to pay or advance **Loss** on behalf of the **Insured Persons**, whether such indemnity or advancement is pursuant to law, charter or other similar formative document, by-laws or written agreements of the **Company** or any **Outside Entity**, and where the **Company** or such **Outside Entity**:

(a)   refuses to pay or advance such **Loss** for any reason; or

(b)   fails to pay or advance such **Loss** for any reason within 45 days of a specific request being made by or on behalf of the **Insured Persons**,

then this Policy will pay or advance such **Loss** after Underwriters have received written and itemized documentation of such **Loss** by means of invoices or otherwise, subject to all of its provisions, including without limitation Clause X.

**III.    EXCLUSIONS**

Underwriters shall not be liable to make any payment in connection with any **Claim**, **Investigation** or **Inquiry**:

A.   based upon, arising out of, or attributable to:

1.   any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given prior to the **Policy Period** and accepted under any other Directors and Officers Liability or Employment Practices Liability Policy of which this Policy is a renewal, replacement or which it succeeds in time,

2.   any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**, or



3. any written demand, suit, investigation or other proceeding pending, or order, decree or judgment entered, against any **Insured** prior to the date set forth in Item K. of the Declarations, or any **Wrongful Act**, fact, circumstance or situation underlying or alleged therein;

B. for:

1. any deliberately fraudulent or deliberately criminal act or omission by the **Insured Person**;

2. any personal profit or financial advantage gained by the **Insured Person** to which they were not legally entitled; or

3. the return by the **Insured Person** of any remuneration paid to them without the previous approval of the appropriate governing body of the **Company**,

as determined by a final non-appealable adjudication adverse to the relevant **Insured Person** in the underlying action.

Notwithstanding the foregoing:

1. Exclusions  B,1., 2. and 3. shall not apply to **Costs, Charges and Expenses** or **Independent Directors**; and

2. Exclusions B.2. and B.3. shall not apply to:

    (a) that portion of any **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933 as amended; or

    (b) **Facilitation Costs** incurred in connection with that portion of any **Claim** alleging violations of Section 304(a) of the Sarbanes-Oxley Act of 2002, Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act or any internal policy of the **Company** promulgated in accordance therewith or the Food, Drug, and Cosmetic Act, 21 U.S.C. Section 301, et seq. or any internal policy of the **Company** promulgated in accordance therewith.

With respect to Exclusion B.1. for acts or omissions which are treated as a criminal violation in a jurisdiction outside the United States of America that are not treated as a criminal violation in the United States of America, the imposition of a criminal fine or other criminal sanction in such jurisdiction will not, by itself, be conclusive proof that a deliberately fraudulent or deliberately criminal act or omission occurred.

For the purpose of determining the applicability of any of the Exclusions, no facts pertaining to, no knowledge possessed by, and no **Wrongful Act** of any of the **Insured Persons** or the **Company** shall be imputed to any other **Insured Person**.

IV.    **LIMIT OF LIABILITY AND ORDER OF PAYMENTS**

A. Limit of Liability

1. The amount shown in Item C. of the Declarations shall be the maximum aggregate Limit of Liability of Underwriters under the Policy.



2. Payments of **Loss** by Underwriters shall reduce the Limit of Liability and any applicable Sublimit of Liability.

B.    Multiple **Claims**, **Investigations** and **Inquiries**

1.    More than one **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to constitute a single **Claim** and shall be deemed to have been made at the earliest of the following dates:

(a)   the date on which the earliest **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** is first made; or

(b)   the date on which the **Claim** involving the same **Wrongful Act** or **Interrelated Wrongful Acts** shall be deemed to have been made pursuant to Clause VI.D.

2.    More than one **Investigation** having as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions shall be deemed to constitute a single **Investigation** and shall be deemed to have been commenced at the earliest of the following dates:

(a)   the date on which the earliest **Investigation** is first commenced; or

(b)   the date on which the **Investigation** shall be deemed to have been commenced pursuant to Clause VI.D.

3.    If an **Inquiry** is first reported to Underwriters during the **Policy Period** in accordance with Clause VI.B. then such **Inquiry** and any subsequent **Inquiry** having as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions shall be deemed a single **Inquiry** first reported on the date the earliest **Inquiry** is first reported.

4.    Any **Claim**, **Investigation** or **Inquiry** having as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions shall be deemed a single **Claim** and shall be deemed to have been made at the earliest of the following dates:

(a)   the date on which the **Inquiry** is first reported;

(b)   the date on which the **Investigation** is first commenced; or

(c)   the date on which the **Claim** is first made.

C.    Order of Payments

Payments of **Loss** by Underwriters shall reduce the Limit of Liability.  Underwriters shall pay **Loss** in the following order:

1.    first, **Loss** that is allocable to any **Wrongful Act** committed or any conduct undertaken prior to the **Company** becoming a debtor in possession under the United States bankruptcy law or similar legal status under foreign law; and

2.    second, **Loss** that is allocable to any **Wrongful Act** committed or any conduct undertaken on or after the **Company** became a debtor in possession under the United States bankruptcy law or similar legal status under foreign law.



Underwriters shall have no obligation to pay **Loss** after exhaustion of the Limit of Liability.

D.   Advancement of **Policy Costs**

Underwriters shall advance or pay **Policy Costs** on a current basis but no less than once every sixty (60) days.

## V.   SETTLEMENTS AND DEFENSE

A.   Appointment of Defense Counsel and incurring of **Policy Costs** (other than **Mitigation Costs**)

The **Insured Persons** may not appoint defense counsel to handle any **Claim**, **Investigation** or **Inquiry** without Underwriters' consent, such consent not to be unreasonably withheld, conditioned or delayed.  No **Costs, Charges and Expenses**, **Facilitation Costs**, **Personal Asset Costs**, **Personal Reputation Costs**, **Foreign Accommodation Costs** or **Inquiry Costs** shall be incurred without Underwriters' consent, such consent not to be unreasonably withheld, conditioned or delayed.

Underwriters' consent will not be required in connection with incurring any **Costs, Charges and Expenses**, **Facilitation Costs**, **Personal Asset Costs**, **Personal Reputation Costs**, **Foreign Accommodation Costs** or **Inquiry Costs** to the extent the **Claim**, **Investigation** or **Inquiry** is covered or consent is given under any other insurance or where indemnification is provided by the **Company** or any **Outside Entity**.

B.   Incurring of **Mitigation Costs**

No **Mitigation Costs** shall be incurred without Underwriters' prior written consent, such consent not to be unreasonably withheld, conditioned or delayed.

As a condition precedent to the **Insured Persons** right to payment of **Mitigation Costs**:

1.   the **Insured Persons** shall demonstrate, to the reasonable satisfaction of Underwriters, that the incurring of such **Mitigation Costs** is reasonably likely to prevent such fact, circumstance or situation from resulting in a **Claim**, **Investigation** or **Inquiry**;

2.   any action taken by the **Insured Persons** shall only be taken with the prior written consent of Underwriters, such consent not to be unreasonably withheld, conditioned or delayed.

3.   the liability of Underwriters for **Mitigation Costs** shall in no event exceed the amount of **Loss** they would have paid if a **Claim**, **Investigation** or **Inquiry** were to be pursued against the **Insured Persons**; and

4.   the **Insured Persons** shall establish that such **Claim**, **Investigation** or **Inquiry** would be covered under this Policy.

C.   Settlements

No settlement shall be made without Underwriters' consent, such consent not to be unreasonably withheld, conditioned or delayed.

D.   Duty of the **Insured Persons**



It shall be the duty of the **Insured Persons** and not the duty of Underwriters to defend **Claims**, **Investigations** or **Inquiries**. Underwriters shall have the right and shall be given the opportunity to effectively associate with the **Insured Persons** in the investigation, defense and settlement of any **Claim**, **Investigation** or **Inquiry** that appears reasonably likely to be covered in whole or in part hereunder.

**VI.      NOTIFICATION**

A.   Notification of **Claim** and **Investigation**

The **Insured Persons** or the **Company** shall, as a condition precedent to the **Insured Persons'** rights to payment under this Policy, give to Underwriters notice in writing of any **Claim** or **Investigation** as soon as practicable after the risk manager or general counsel of the **Parent Company** first becomes aware of such **Claim** or **Investigation**, but in no event later than:

1.   sixty (60) days after the end of the **Policy Period**, or

2.   in the event this Policy is renewed with Underwriters, one hundred and eighty (180) days after the end of the **Policy Period**.

In the event that the **Insured Persons** or the **Company**:

(a)   fail to provide notice of a **Claim** or **Investigation** in accordance with the above, Underwriters shall not be entitled to deny coverage for the **Claim** or **Investigation** based upon late notice, unless Underwriters can establish that their interests were materially prejudiced by reason of such late notice; or

(b)   should have notified Underwriters regarding a **Claim** or **Investigation** but were unable to do so due to being prohibited from disclosing information by a **Regulatory Authority** or pursuant to the terms of a confidentiality agreement, then 'as soon as practicable' shall mean as soon as the **Insured Persons** or the **Company** are permitted to disclose the information by the **Regulatory Authority** or pursuant to the terms of the confidentiality agreement.

B.   Notification of **Inquiry**

If the **Insured Persons** elect to seek coverage for **Inquiry Costs** in connection with an **Inquiry**, the **Insured Persons** or the **Company** shall give to Underwriters notice in writing of such **Inquiry**, but in no event later than:

1.   the end of the **Policy Period**; or

2.   in the event this Policy is non-renewed with Underwriters, sixty (60) days after the end of the **Policy Period**.

C.   Notification for **Mitigation Costs**

The **Insured Persons** or the **Company** shall, as a condition precedent to the **Insured Persons'** rights to payment of **Mitigation Costs** under this Policy, provide Underwriters with the information required in Clause VI.D.(a) through VI.D.(c) as soon as practicable after the risk manager or general counsel of the **Parent Company** first becomes aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim**, **Investigation** or **Inquiry**.



D.    Notification of Fact, Circumstance or Situation

If the **Insured Persons** or the **Company**:

1. is aware of a specific fact, circumstance or situation which could reasonably give rise to a **Claim**, **Investigation** or **Inquiry**; or

2. receives any request to toll, extend or waive a period or statute of limitation or a contractual timebar which may be applicable to any **Claim**, **Investigation** or **Inquiry**,

and if the **Insured Persons** or the **Company** during the **Policy Period** gives written notice to Underwriters of:

(a) the specific fact, circumstance, situation or the request to toll, extend or waive a period or statute of limitation or a contractual timebar;

(b) the consequences which have resulted or may result therefrom; and

(c) the manner by which the **Insured Persons** or the **Company** first became aware thereof,

then any **Claim** made, **Investigation** commenced or **Inquiry** reported subsequently arising out of such fact, circumstance, situation or the request to toll, extend or waive a period or statute of limitation or a contractual timebar shall be deemed for the purposes of this Policy to have been made, commenced or reported at the time such notice was first given.

E.    Notice to Underwriters

Notice to Underwriters provided for in Clause VI. shall only be deemed effective if given to the firm shown under Item G. of the Declarations.

**VII.    OTHER INSURANCE AND INDEMNIFICATION**

The **Insured Persons** and Underwriters agree that all coverage under this Policy is excess over and will not contribute with:

A.    all other valid and collectible insurance, whenever purchased, whether such other insurance is stated to be primary, contributing, excess, contingent or otherwise, unless such other insurance is written as specific excess insurance over the Limit of Liability provided by this Policy; and

B.    all indemnification to which the **Insured Persons** may be entitled from the **Company** or any **Outside Entity**.

However, the coverage under this Policy shall apply as primary to any personal directorship or umbrella liability insurance of any of the **Insured Persons** or any Directors and Officers Liability insurance issued to any equity holder of the **Company**.

**VIII.    GENERAL CONDITIONS**

A.    Severability



The **Application** shall be construed as a separate **Application** for coverage by each of the **Insured Persons** and no knowledge possessed by any **Insured Person** or the **Company** shall be imputed to any other **Insured Person**.

Underwriters shall not be entitled to void this Policy, in whole or in part, or to rescind this Policy at any time.

B.   Adjustment Clause

1.   Mergers and Acquisitions by the **Company**

In the event the **Company**:

(a)   acquires any other entity or acquires substantially all of the assets of another entity where such assets acquired exceed twenty-five percent (25%) of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement;

(b)   merges with another entity such that the **Company** is the surviving entity where such assets of the merged entity exceed twenty-five percent (25%) of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement; or

(c)   acquires a **Subsidiary** where such assets acquired exceed twenty-five percent (25%) of the consolidated assets of the **Company** as set forth in the **Company's** most recent audited financial statement,

after the inception of this Policy, coverage shall be afforded for a period of ninety (90) days for any **Loss** in any way involving the assets acquired or the assets, liabilities, directors, officers or employees of the entity acquired or merged with, but only with respect to any **Wrongful Act** committed or any conduct undertaken on or after the date such entity is acquired, merged with or became a **Subsidiary**. Coverage beyond such ninety (90) day period shall only be available if:

i)   written notice of such transaction or event is given to Underwriters by the **Parent Company**;

ii)   the **Parent Company** provides Underwriters with such information in connection therewith as Underwriters may deem necessary;

iii)   the **Insured Persons** accept any special terms, conditions, exclusions or additional premium charge as may be required by Underwriters; and

iv)   Underwriters, at their sole discretion, agree to provide such coverage.

2.   Cessation of **Subsidiaries**

In the event any entity ceased to be a **Subsidiary** as defined herein after the inception date of this Policy, or of any policy of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to any of the **Insured Persons** who were covered under this Policy because of their service with such entity but only with respect to any **Wrongful Act** committed or allegedly committed or any conduct undertaken or allegedly undertaken prior to the time such entity ceased to be a **Subsidiary**.

3.   **Corporate Takeover**



Except if an **Predetermined Run-Off Period** is purchased in accordance with Clause IX.B., in the event of a **Corporate Takeover** after the inception date of this Policy or of any policy issued by Underwriters of which this Policy is a renewal or replacement, this Policy, subject to its terms, shall continue to apply to the **Insured Persons** but only with respect to any **Wrongful Act** committed or allegedly committed or any conduct undertaken or allegedly undertaken prior to the **Corporate Takeover**.

C.   Cancellation Clause

1.   By acceptance of this Policy, the **Insured Persons** hereby confer the exclusive power and authority to cancel this Policy on their behalf to the **Parent Company**. Such entity may cancel this Policy by surrender thereof to Underwriters, or by mailing to Underwriters written notice stating when thereafter such cancellation shall be effective. The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice shall be equivalent to mailing.

2.   Underwriters may cancel this Policy only for nonpayment of premium by mailing to the **Parent Company** written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the **Policy Period**.  Delivery of such written notice by Underwriters shall be equivalent to mailing.  If the foregoing notice period is in conflict with any governing law or regulation, then such period shall be amended to afford the minimum notice period permitted thereunder.

3.   If this Policy is cancelled pursuant to 1. hereinabove, Underwriters shall retain the customary short rate proportion of the premium hereon.  If this Policy is cancelled pursuant to 2. hereinabove, Underwriters shall retain the pro rata proportion of the premium hereon.  Payment or tender of any unearned premium by Underwriters shall not be a condition to the effectiveness of cancellation.

D.   Company Authorization Clause

By acceptance of this Policy the **Insured Persons** agree that the **Parent Company** will act on their behalf with respect to the giving of all notices to Underwriters, the receiving of notices from Underwriters, the payment of the premium and the receipt of any return premium, except where provided under Clause IX.

However, any **Insured Person** may, upon notice to Underwriters, designate an agent to replace the **Parent Company** to represent him or her with respect to all or any of the matters listed above.

E.   Valuation and Currency Clause

All premiums, limits and **Loss** under this Policy are expressed in the currency of the United States.  If judgment is rendered, settlement is denominated or another element of **Loss** under this Policy is stated in a currency other than United States dollars or **Policy Costs** are paid in a currency other than United States dollars, payment under this Policy shall be made, at the **Insured Persons** election, either:

(a)      in United States dollars; or



    (b)    in the foreign jurisdiction at issue and in the foreign currency at issue, to the extent legally permissible.

The rate of exchange published in the Wall Street Journal on the date the judgment becomes final or payment of the settlement or other element of **Loss** is due or the date **Policy Costs** are paid shall be used to calculate erosion of the limits of liability of this Policy.

E.    Bankruptcy Clause

Bankruptcy or insolvency of the **Company** or any of the **Insured Persons** shall not relieve Underwriters of any of their obligations under this Policy.

If a liquidation or reorganization proceeding is commenced by the **Company** (whether voluntarily or involuntarily) under Title 11 of the United States Code (as amended), or any similar state, local or foreign law, then, in regard to a covered **Claim**, **Investigation** or **Inquiry** under this Policy, Underwriters and the **Insured Persons** hereby agree not to oppose or object to any efforts by Underwriters or any of the **Insured Persons** to obtain relief from any stay or injunction applicable to the proceeds of this Policy as a result of the commencement of such liquidation or reorganization proceeding.

F.    Recovery Clause

In the event Underwriters recover amounts they have paid under this Policy, Underwriters will reinstate the Limit of Liability of this Policy to the extent of such recovery, less its costs incurred in administering and obtaining such recovery. Underwriters assume no duty to seek a recovery of any amounts paid under this Policy.

**IX.**    **EXTENSIONS TO THE POLICY PERIOD**

A.    **Optional Extension Period**

If this Policy is not renewed by the **Parent Company** or by Underwriters, then the **Parent Company** or any of the **Insured Persons** shall have the right, upon payment of an additional premium calculated at that percentage shown in Item E.1. of the Declarations of the total premium for this Policy, to an extension of the coverage granted by this Policy with respect to:

1.    any **Claim** first made or **Investigation** first commenced during the period of time set forth in Item E.2. of the Declarations after the Policy expiration date, but only with respect to any **Wrongful Act** committed or any conduct undertaken before the Policy expiration date; or

2.    any **Inquiry** first reported to Underwriters during the period of time set forth in Item E.2. of the Declarations after the Policy expiration date, but only with respect to any **Inquiry** first received on or after the date set forth in Item H. of the Declarations for any conduct undertaken before the Policy expiration date.

B.    **Predetermined Run-Off Period**

In the event of a **Corporate Takeover**, the **Parent Company** or any of the **Insured Persons** shall have the right, upon payment of an additional premium calculated at that applicable percentage shown in Item F.1. of the Declarations of the total premium



for this Policy (less any unearned premium calculated at pro rata for the period from the date of such **Corporate Takeover**), to an extension of the coverage granted by this Policy with respect to:

1. any **Claim** first made or **Investigation** first commenced during the applicable period of time set forth in Item F.2. of the Declarations after the date of such **Corporate Takeover**, but only with respect to any **Wrongful Act** committed or any conduct undertaken before the date of such **Corporate Takeover**; or

2. any **Inquiry** first reported to Underwriters during the applicable period of time set forth in Item F.2. of the Declarations after the date of such **Corporate Takeover**, but only with respect to any **Inquiry** first received on or after the date set forth in Item H. of the Declarations for any conduct undertaken before the date of such **Corporate Takeover**.

C. **Retired and Resigned Insured Person Extension Period**

If this Policy is not renewed by the **Parent Company** or by Underwriters, then any of the **Insured Persons** who have retired or resigned prior to or during the **Policy Period** shall have an automatic extension of the coverage granted by this Policy with respect to:

1. any **Claim** first made or **Investigation** first commenced during the seventy-two month period following the end of the **Policy Period**, but only with respect to any **Wrongful Act** committed or any conduct undertaken before the Policy expiration date; or

2. any **Inquiry** first reported to Underwriters during the seventy-two month period following the end of the **Policy Period**, but only with respect to any **Inquiry** first received on or after the date set forth in Item H. of the Declarations for any conduct undertaken before the Policy expiration date.

D. **Extension Conditions**

1. As a condition to the right to the coverage afforded under the **Optional Extension Period**, the **Predetermined Run-Off Period** or the **Retired and Resigned Insured Person Extension Period** the total premium for this Policy must have been paid.

2. The **Retired and Resigned Insured Person Extension Period** shall not apply in the event the **Company** or such **Insured Person** has purchased other insurance, including any optional extension period or equivalent, to replace, in whole or in part, the insurance provided under this Policy.

3. The exercise of the **Optional Extension Period**, the **Predetermined Run-Off Period** or the **Retired and Resigned Insured Person Extension Period** shall not in any way increase the Limit of Liability of Underwriters.

4. In the event the **Optional Extension Period** or the **Predetermined Run-Off Period** is purchased under this Policy or the **Retired and Resigned Insured Person Extension** is exercised and the law in any foreign country imposes a requirement for a minimum extension period, then the applicable period of time under this Policy shall be extended in order to comply with any such minimum extension period but solely with respect to any **Claim**, **Investigation** or **Inquiry** first brought and maintained in such country.



### X.   ASSISTANCE, COOPERATION AND SUBROGATION

The **Insured Persons** agree to provide Underwriters with such information, assistance and cooperation as Underwriters or their counsel may reasonably request, and they further agree that, after a **Claim** has been made against them, an **Investigation** has been commenced against them or an **Inquiry** has been received by them, they shall not take any action which in any way increases Underwriters' exposure under this Policy.  The failure of any of the **Insured Persons** or the **Company** to give Underwriters or their counsel the information, assistance and cooperation that they may reasonably request shall not impair the rights of any other **Insured Person** under this Policy.

The reporting of matters to, and subsequent communication with a **Regulatory Authority** by the **Company** or any of the **Insured Persons**, whether pursuant to law, regulation, negotiation under a deferred prosecution agreement or otherwise will not constitute a contravention of this provision by the **Company** or such **Insured Persons**.

In the event of any payment under this Policy, Underwriters shall be subrogated to the **Insured Persons'** rights of recovery therefor against any person or entity, including without limitation for indemnification by the **Company** or any **Outside Entity**, to the extent of such payment.  The **Insured Persons** shall execute all papers required and shall do everything that may be reasonably necessary to secure and preserve such rights including the execution of such documents as are necessary to enable Underwriters effectively to bring suit in their name, and shall provide all other assistance and cooperation which Underwriters may reasonably require.

Notwithstanding the foregoing, Underwriters agree to waive their rights of subrogation against any of the **Insured Persons**.

### XI.   WORLDWIDE

This Policy applies only to **Claims** first made, **Investigations** first commenced and **Inquiries** first reported during the **Policy Period** anywhere in the world as permitted by law.

However, in the event that Underwriters are unable to pay **Loss** in any country outside of the United States due to Underwriters not holding a valid local license in such country, the **Insured Persons** may, where permitted by law, elect to have **Loss** paid in a country where Underwriters do hold a valid local license.  The **Insured Persons** agree that such payments of **Loss** by Underwriters shall satisfy Underwriters' obligations under this Policy in respect of **Loss** which is due to be paid in such country in which Underwriters do not hold a valid local license.

### XII.   SERVICE OF SUIT

It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters at the request of any of the **Insured Persons** will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.  It is further agreed that service of process in such suit may be made upon the firm shown under Item I. of the Declarations, and that in such suit instituted against any one of Underwriters upon this Policy, Underwriters will abide by the final decision of such court or of any appellate court in the event of an appeal.



The firm shown under Item I. of the Declarations is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of any of the **Insured Persons** to give a written undertaking to such **Insured Person** that it will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to the statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officers specified for that purpose in the statute, or any of their successors in office, as their true and lawful attorney, upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of any of the **Insured Persons** or any beneficiary hereunder arising out of this Policy, and hereby designate the firm shown in Item I. of the Declarations as the firm to whom the said officer is authorized to mail such process or a true copy thereof.

## XIII.   CHOICE OF LAW

Except with respect to the insurability of damages under the definition of **Loss**, any dispute involving this Policy shall be resolved by applying the law of the state designated in Item J. of the Declarations.

## XIV.   DEFINITIONS

The following terms whenever used in this Policy in boldface type shall have the meanings indicated.

"**Application**" means:

1.   the completed and signed application for this Policy (if any) including any written materials submitted therewith, and

2.   any public documents filed by the **Company** with the Securities and Exchange Commission during the twelve (12) month period prior to the inception date of this Policy,

all of which shall be deemed part of this Policy, as if physically attached.

"**Claim**" means:

1.   (a)   any written demand for monetary damages, non monetary relief, injunctive relief or other relief first made against any of the **Insured Persons**, or

    (b)   any civil, criminal, administrative, regulatory, arbitration or mediation proceeding or other alternative dispute resolution process first made against any of the **Insured Persons**,

    during the **Policy Period** for a **Wrongful Act**, including but not limited to:

    (i)   any appeal from any such proceeding;

    (ii)   any proceeding before the Equal Employment Opportunity Commission or any similar federal, state, local or foreign governmental body;

    (iii)   any **Manslaughter Claim**;



(ii)   any formal demand or proceeding arising out of any statutory liability of the **Insured Persons** due to the failure of the **Company** to deduct, withhold or remit taxes (including non-resident withholding taxes, goods and services taxes, salary or withholding taxes and employee source deductions), unemployment insurance contributions, or pension plan contributions; or

(v)   any formal demand or proceeding arising out of any statutory liability of the **Insured Persons** due to the failure of the **Company** to pay debts for services performed by an employee of the **Company** for salary, wages or related amounts such as vacation pay or holiday pay; or

2.   (a)   any extradition proceeding first initiated against any of the **Insured Persons**, or

    (b)   the arrest and detainment or incarceration of any of the **Insured Persons**,

during the **Policy Period** with respect to their status as **Insured Persons** of the **Company**, by any law enforcement authority,

but shall not include any **Investigation** or **Inquiry**.

**"Company"** means:

1.   the **Parent Company**;

2.   any **Subsidiary**;

3.   the **Parent Company** or any **Subsidiary** as a debtor in possession under the United States bankruptcy law or similar legal status under foreign law; and

4.   any foundation, charitable trust or political action committee totally funded or controlled by the **Parent Company** or any **Subsidiary**.

**"Corporate Takeover"** means:

1.   the acquisition by any person or entity of more than fifty percent (50%) of the outstanding securities of the **Parent Company** representing the present right to vote for the election of directors; or

2.   the merger of the **Parent Company** into another entity such that the **Parent Company** is not the surviving entity.

**Corporate Takeover** shall not be considered to have occurred in the event of appointment of a receiver, liquidator, conservator, trustee or similar official.

**"Costs, Charges and Expenses"** means:

1.   reasonable fees, costs, charges and expenses incurred by the **Insured Persons** in defense, settlement, investigation and appeal of any **Claim** or in responding to any **Investigation** and cost of attachment or similar bonds, including:



(a)     reasonable attorneys and expert fees incurred by the **Insured Persons** in defense, settlement, investigation and appeal of any **Claim** or in responding to any **Investigation**, and

(b)     reasonable legal fees and expenses incurred by the **Insured Persons** in defense, settlement, investigation and appeal of:

(i)     any **Claim** made against the chief executive officer or chief financial officer of the **Parent Company** seeking repayment of compensation as a result of a financial restatement of the **Company** pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, or

(ii)    any **Claim** seeking repayment of compensation as a result of a financial restatement of the **Company** pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act or any internal policy of the **Company** promulgated in accordance therewith, and

2.   reasonable costs (other than collateral) for a bond or other financial instrument to guarantee the contingent obligation of the **Insured Persons** for bail or its equivalent required by a court in any foreign jurisdiction, and

3.   **Foreign Accommodation Costs** where such **Foreign Accommodation Costs** are not paid by the **Company**, subject to a maximum sublimit of USD50,000 for each **Insured Person** and all of his or her **Relatives** and USD250,000 in the aggregate for all **Insured Persons** and all of his or her **Relatives** for the **Policy Period**, such sublimits shall be part of, and not in addition to, the Limit of Liability stated in Item C.1. of the Declarations, and

4.   reasonable fees and expenses incurred by the **Insured Persons** at Underwriters' request to assist Underwriters in investigating the **Claim** or **Investigation**, and

5.   reasonable legal fees and expenses incurred by any of the **Insured Persons** where deposed as a witness in connection with any **Claim** against or **Investigation** or **Inquiry** of any other **Insured Person**.

**"Facilitation Costs"** means reasonable fees, costs and expenses (including the premium or origination fee for a loan or bond) incurred by:

1.   the chief executive officer or chief financial officer of the **Parent Company** to facilitate the return of amounts required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, or

2.   the **Insured Persons** to facilitate the return of amounts required to be repaid pursuant to Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act or any internal policy of the **Company** promulgated in accordance therewith, or

3.   the **Insured Persons** to facilitate the return of amounts required to be repaid pursuant to the Food, Drug, and Cosmetic Act, 21 U.S.C. Section 301, et seq. or any internal policy of the **Company** promulgated in accordance therewith,

provided that such fees, costs or expenses do not include the payment, return, reimbursement, disgorgement or restitution of any amounts requested or required to be repaid pursuant to Section 304(a) of the Sarbanes-Oxley Act of 2002, Section 954 of the Dodd-Frank Wall Street Reform and Consumer Protection Act or the Food, Drug, and



Cosmetic Act, 21 U.S.C. Section 301, et seq. or any internal policy of the **Company** promulgated in accordance therewith.

**"Foreign Accommodation Costs"** means, where legally permissible, the following expenses and fees incurred in connection with an extradition proceeding or arrest and detainment as described in part 2. of **Claim**:

1.    reasonable travel expenses incurred by a **Relative** to travel to a foreign jurisdiction in which the **Insured Person** is not domiciled,

2.    reasonable accommodation expenses incurred by any of the **Insured Persons** or any of his or her **Relatives** to temporarily reside in a foreign jurisdiction in which such **Insured Person** is not domiciled,

3.    reasonable fees incurred by any of the **Insured Persons** or any of his or her **Relatives** to convert currency to the currency of a foreign jurisdiction in which such **Insured Person** is not domiciled, or

4.    reasonable fees incurred by any of the **Insured Persons** or any of his or her **Relatives** to obtain the services of an interpreter or translator.

"**Independent Director**" means any **Insured Person** who was, now is, or shall be a director of the **Company** or any person serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States, provided such **Insured Person** has not been an employee, officer or equivalent executive of the **Company** in the past three (3) years.

**"Inquiry"** means:

(a)    a request by a **Regulatory Authority** for any of the **Insured Persons** to appear for an interview or meeting or to provide sworn testimony or to produce documents,

(b)    a request by or on behalf of the **Company** for any of the **Insured Persons** to appear for an interview or meeting or to provide sworn testimony or to produce documents in connection with:

(i)    an inquiry or investigation of any of the **Insured Persons** or the **Company** by a **Regulatory Authority**,

(ii)    an investigation by the **Company**, or

(iii)    a security holder derivative demand or a derivative action lawsuit,

(c)    a request by or on behalf of the **Company** or by a **Regulatory Authority** for any of the **Insured Persons** to appear as a witness in a trial or a court hearing of any criminal proceeding against the **Company** under the UK Corporate Manslaughter & Homicide Act 2007 or its equivalent in any jurisdiction,

(d)    a request by any court-appointed trustee, examiner, receiver, liquidator, conservator, rehabilitator or similar official of the **Company** for any of the **Insured Persons** to appear for an interview or meeting or to provide sworn testimony or to produce documents in connection with any bankruptcy proceeding by or against the **Company**,



(e)     a raid on, or non-routine on-site visit to, the **Company** by any **Regulatory Authority** that involves the production, review, copying or confiscation of information, documents or materials in any form that are in the possession or control of any **Insured Person**, including devices, products, components, records, electronic information and files or interviews of such **Insured Person**,

(f)     a request by or on behalf of a party to any litigation, arbitration or other type of proceeding against the **Company** for any of the **Insured Persons** to appear for an interview or meeting or to provide sworn testimony or to produce documents in connection with such litigation, arbitration or proceeding,

(g)     a request by any other person or organization for any of the **Insured Persons** to appear for an interview or meeting or to provide sworn testimony or to produce documents, or

(h)     any informal investigation of any of the **Insured Persons** by a **Regulatory Authority** after such **Insured Person** becomes aware that he or she is the subject of such investigation and, as a consequence of such investigation, retains legal counsel,

regarding such **Insured Person's** capacity as such or the business of the **Company**, where such request, raid, on-site visit or informal investigation is first reported to Underwriters in accordance with Clause VI.B., provided such request or informal investigation is first received by the **Insured Persons**, or such raid or on-site visit occurs, on or after the date set forth in Item H. of the Declarations.

**Inquiry** shall not include any routine or regularly scheduled regulatory or internal supervision, inspection, compliance, review, examination, production or audit, including any request for mandatory information from a regulatory entity.

**"Inquiry Costs"** means reasonable fees and expenses incurred by the **Insured Persons** in connection with such **Insured Persons'** preparation for, attendance at and response to an **Inquiry**, including reasonable fees and expenses incurred by the **Insured Persons** to produce documents in his or her possession, to prepare for an interview or meeting, or to provide sworn testimony, but shall not include:

1.     costs of complying with any discovery or other request seeking documents (including electronic information) for which the **Company** has the direct financial responsibility to produce; or

2.     any amounts incurred prior to the time that the **Inquiry** is reported to Underwriters in accordance with Clause VI.B.

**"Insured Persons"** means:

1.     all persons who were, now are, or shall be directors, officers or trustees (other than bankruptcy trustees) of the **Company** and all persons serving in a functionally equivalent role for the **Parent Company** or any **Subsidiary** operating or incorporated outside the United States;

2.     all persons who were, now are, or shall be employees of the **Company**, but only to the extent:



(a)     such employee is named as a co-defendant in any **Claim** or **Investigation** with any of the persons set forth in this definition;

(b)     such employee receives a request to respond to an **Inquiry** concurrently with any of the persons set forth in this definition; and

3.     the lawful spouse or domestic partner of any of the persons set forth in this definition, but only to the extent the spouse or domestic partner is a party to any **Claim** or **Investigation** solely because of his or her status as the spouse or domestic partner of any such persons and only for the purposes of any **Claim** or **Investigation** seeking damages recoverable from marital community property, property jointly held by any such person and the spouse or domestic partner, or property transferred from any such person to the spouse or domestic partner,

including their estates, heirs, legal representatives, trusts, estate planning vehicles or assigns in the event of their death, incapacity or bankruptcy.

**"Insured Persons"** shall include:

(a)   all persons who were, now are, or shall be the risk manager of the **Company**;

(b)   all persons who were, now are, or shall be managers or functionally equivalent roles of any limited liability company as defined in the definition of **Subsidiary**;

(c)   all persons who were, now are, or shall be members of the board of managers of the **Company**;

(d)   all natural persons who were, now are, or shall be shadow directors, as defined under Section 251 of the United Kingdom Companies Act 2006, of the **Parent Company** or any **Subsidiary** operating or incorporated in the United Kingdom or the Republic of Ireland;

(e)   any de facto or alleged de facto director of the **Company**;

(f)   all persons who were, now are, or shall be serving as a representative of an entity that serves as a director of the **Company**; and

(g)   all persons who were, now are, or shall be a prospective director of the **Company** named in any registration statement, prospectus or similar offering document.

**"Interrelated Wrongful Acts"** means **Wrongful Acts** which have as a common nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions.

**"Investigation"** means any formal investigation of any of the **Insured Persons** first commenced during the **Policy Period** by a **Regulatory Authority**:

1.     once any such **Insured Persons** are identified in writing by such **Regulatory Authority** as a person against whom a **Claim** may be brought, including without limitation receipt of a target letter, or

2.     after the service of a subpoena or other similar written request compelling testimony or document production upon any such **Insured Persons**, or



3. after any such **Insured Persons** have been identified in a Wells Notice, target letter or other written notice describing actual or alleged violations of securities laws or other laws by any such **Insured Persons**.

**"Loss"** means:

1. any amounts which the **Insured Persons** become legally obligated to pay as a result of any **Claim** or **Investigation**, including damages, judgments (including pre and post-judgment interest), and settlements (including plaintiff attorney fees and expenses awarded or approved by the court in connection with a settlement of any **Claim**), and

2. **Policy Costs**.

**"Loss"** shall include:

(a) punitive, exemplary or multiplied damages where any applicable law allows coverage for punitive, exemplary or multiplied damages incurred by any of the **Insured Persons**,

(b) that portion of any tax assessment imposed on any of the **Insured Persons** by a foreign jurisdiction based on Underwriters' payment of such damages, judgments, settlements, **Inquiry Costs** or **Costs, Charges and Expenses** as a foreign or non-admitted carrier; or

(c) any statutory liability for any taxes owed by any of the **Insured Persons** as described in the definition of **Claim**;

(d) any other taxes owed by the **Company** for which any of the **Insured Persons** are held legally liable where any applicable law allows coverage for such taxes;

(e) any statutory liability for any wages, salary or benefits owed by any **Insured Persons** as described the definition of **Claim**;

(f) fines or civil penalties assessed against any of the **Insured Persons** pursuant to Section 78dd 2(g)(2)(B) or Section 78ff (c)2(B) of the Foreign Corrupt Practices Act, 15 U.S.C. or Section 11(1)(a) of the United Kingdom Bribery Act of 2010, Chapter 23 or any statute or law similar to the foregoing in any jurisdiction,

(g) civil penalties assessed against any of the **Insured Persons** for the benefit of shareholders pursuant to Section 308 of the Sarbanes Oxley Act of 2002,

(h) civil fines and penalties, unpaid wages or other amounts for which any of the **Insured Persons** are held legally liable to pay pursuant to the Fair Labor Standards Act, the California Fair Pay Act, Section 630 of the New York Business Corporation Law, each as amended, or any similar federal, state, foreign or local law where any applicable law allows coverage for such fines, penalties, wages or amounts,

(i) any other fine or penalty imposed against any of the **Insured Persons** where any applicable law allows coverage for such fine or penalty,

(j) **Personal Asset Costs**, subject to a maximum sublimit of USD 500,000 in the aggregate for the **Policy Period**, such sublimit shall be part of, and not in addition to, the Limit of Liability stated in Item C.1. of the Declarations, and



(k)   **Personal Reputation Costs**, subject to a maximum sublimit of USD 500,000 in the aggregate for the **Policy Period**, such sublimit shall be part of, and not in addition to, the Limit of Liability stated in Item C.1. of the Declarations.

**Loss** shall not include (other than **Inquiry Costs** and **Costs, Charges and Expenses**):

(i)    any other taxes or the loss of tax benefits; or

(ii)   matters deemed uninsurable under the law pursuant to which this Policy shall be construed.

Notwithstanding the foregoing, Underwriters shall not assert that the portion of any judgment, settlement or **Costs, Charges and Expenses** incurred in connection with any **Claim** alleging violations of Section 11, 12 or 15 of the Securities Act of 1933 as amended, are uninsurable.

With respect to coverage for any such **Loss** above, any applicable law most favourable to the insurability of **Loss** shall apply.  If the **Insured Persons** demonstrate in good faith (including presenting a written legal opinion) that **Loss** is insurable under such law, Underwriters shall not challenge that interpretation of insurability. The cost of such legal opinion shall be borne by Underwriters. For purposes of this provision, "any applicable law" shall include but not be limited to the law: a) where the **Claim** seeking such damages was brought, b) where the **Wrongful Acts** giving rise to the **Claim** seeking such damages took place, c) where the **Insured Persons** have their principal place of business or reside, and d) where Underwriters are incorporated or have their principal place of business.

**"Management Control"** means:

1.    owning interest representing more than fifty percent (50%) of the voting, appointment or designation power for the selection of a majority of the board of directors of a corporation, the management committee members of a joint venture, the members of the management board of a limited liability corporation or with respect to entities operating or organized outside the United States, persons serving in a functionally equivalent role; or

2.    having the right, pursuant to written contract or the bylaws, charter, operating agreement or similar documents of the **Company** to elect, appoint or designate a majority of the board of directors of a corporation, the management committee members of a joint venture, the management board of a limited liability corporation or with respect to entities operating or organized outside of the United States, persons serving in a functionally equivalent role.

**"Manslaughter Claim"** means the prosecution of any of the **Insured Persons** for involuntary, constructive or gross negligence manslaughter before the Crown Prosecution Service, the Procurator Fiscal or any similar authority with jurisdiction over any corporate manslaughter violation.

"**Mitigation Costs**" means reasonable fees, costs, charges and expenses incurred by any of the **Insured Persons** solely to mitigate a specific fact, circumstance or situation, that the risk manager, general counsel, chief executive officer or chief financial officer or equivalent of the **Parent Company** first become aware of and report to Underwriters during the **Policy Period** in accordance with Clause VII.D., which could reasonably give rise to a **Claim**, **Investigation** or **Inquiry**, but shall not include:



1.  any amounts incurred prior to the time that such specific fact, circumstance or situation is reported to Underwriters in accordance with Clause VI.D.;

2.  any amounts incurred after the time a **Claim** is made against, an **Investigation** is commenced of, or an **Inquiry** is received by, any of the **Insured Persons** which arises out of such fact, circumstance or situation; or

3.  costs of producing documents for which the **Company** has the direct financial responsibility to produce.

**"Optional Extension Period"** means the period described in Clause IX.A.

**"Outside Entity"** means:

1.  any not-for-profit organization, community chest, fund or foundation; and

2.  any other organization where the **Insured Persons** serve with such organization with the knowledge and consent, at the direction or request, or as part of their regularly assigned duties of the **Company**.

For the purpose of paragraph 2. above, in the event of a disagreement between the **Company** and any of the **Insured Persons** as to whether such **Insured Person** was acting "with the knowledge and consent, at the direction or request, or as part of their regularly assigned duties of the **Company**", it is agreed that Underwriters shall abide by the determination of the **Company** on this issue and such determination shall be made by the **Company** by written notice to Underwriters within 90 days after the **Claim** is first made or the **Investigation** is first commenced against such **Insured Person**. In the event no determination is made within such period, this paragraph shall operate as if the **Company** determined that such **Insured Person** was not acting with the knowledge and consent, at the direction or request, or as part of their regularly assigned duties of the **Company**.

**"Parent Company"** means the entity named in Item A. of the Declarations.

**"Personal Asset Costs"** means reasonable fees, costs, charges and expenses incurred by the **Insured Persons** in connection with any **Claim** or **Investigation** to oppose any efforts by any **Regulatory Authority** to seize, attach or otherwise enjoin the use of the personal assets or real property of such **Insured Person** or to obtain the discharge or revocation of a court order entered during the **Policy Period** in anyway impairing the use thereof.

"**Personal Reputation Costs**" means reasonable fees, costs, charges and expenses charged by any public relations firm or crisis management firm incurred by the **Insured Persons** in connection with any **Claim** or **Investigation** to mitigate the adverse effects to such **Insured Person's** reputation as a result of a negative public statement made about him or her by a **Regulatory Authority**.

**"Policy Costs"** means **Costs, Charges and Expenses**, **Inquiry Costs**, **Facilitation Costs**, **Personal Asset Costs**, **Personal Reputation Costs**, or **Mitigation Costs**, but shall not include salaries, wages, overhead or benefit expenses associated with directors, officers or employees of the **Company**.

**"Policy Period"** means the period from the effective date and hour of this Policy to the Policy expiration date and hour as set forth in Item B. of the Declarations, or its earlier



cancellation date and hour, if any, or the end of the **Optional Extension Period** or **Predetermined Run-Off Period**, if purchased, or the **Retired and Resigned Insured Person Extension Period**, if exercised.

"**Predetermined Run-Off Period**" means the period described in Clause IX.B.

"**Regulatory Authority**" means any federal, state, local or foreign law enforcement or governmental authority (including but not limited to the Department of Justice, the Securities and Exchange Commission and any attorney general) or the enforcement unit of any securities exchange or similar self-regulating body.

"**Relative**" means a lawful spouse, domestic partner, child, stepchild, adopted child, adopted stepchild, lawful spouse of a married child, grandchild, sister, brother, parent, parent-in-law, stepparent, grandparent or grandparent-in-law of any of the **Insured Persons**, or of any resident or individual employed in the household of any of the **Insured Persons**.

"**Retired and Resigned Insured Person Extension Period**" means the period described in Clause IX.C.

"**Subsidiary**" means any entity, including but not limited to any limited liability company, over which the **Parent Company** directly or indirectly had or has **Management Control**, provided, that this Policy only provides coverage for any **Wrongful Act** committed or any conduct undertaken while the **Parent Company** had or has **Management Control** of such entity.

"**Wrongful Act**" means any actual or alleged act, error, omission, misstatement, misleading statement, neglect or breach of duty:

1. by any of the **Insured Persons**, while acting in their capacity as such, or any matter claimed against any of the **Insured Persons** by reason of their serving, or having served, in such capacity;

2. by any of the **Insured Persons**, while acting in their capacity as, or any matter claimed against any of the **Insured Persons** by reason of their serving, or having served, as:

   (a) a controlling person within the meaning of Section 15 of the Securities Act of 1933, as amended or Section 20(a) of the Securities Exchange Act 1934, as amended;

   (b) a director, officer, manager, trustee, governor or executive director or in a functionally equivalent position of any **Outside Entity**; or

   (c) a fiduciary of any employee benefit plan sponsored by the **Company**.

3. by any of the **Insured Persons**, while acting in their capacity as a shareholder of the **Company**, but limited to the selling shareholder capacity.



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No:   1

**(RE) INSURERS LIABILITY SEVERAL NOT JOINT**

The liability of a (re)insurer under this contract is several and not joint with other (re)insurers party to this contract. A (re)insurer is liable only for the proportion of liability it has underwritten.  A (re)insurer is not jointly liable for the proportion of liability underwritten by any other (re)insurer.  Nor is a (re)insurer otherwise responsible for any liability of any other (re)insurer that may underwrite this contract.

The proportion of liability under this contract underwritten by a (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp.  This is subject always to the provision concerning "signing" below.

In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is a (re)insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion.  A member is not jointly liable for any other member's proportion.  Nor is any member otherwise responsible for any liability of any other (re)insurer that may underwrite this contract. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA.  The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address.

**Proportion of liability**

Unless there is "signing" (see below), the proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown next to its stamp and is referred to as its "written line".

Where this contract permits, written lines, or certain written lines, may be adjusted ("signed").  In that case a schedule is to be appended to this contract to show the definitive proportion of liability under this contract underwritten by each (re)insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together).  A definitive proportion (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of a Lloyd's syndicate taken together) is referred to as a "signed line".  The signed lines shown in the schedule will prevail over the written lines unless a proven error in calculation has occurred.

Although reference is made at various points in this clause to "this contract" in the singular, where the circumstances so require this should be read as a reference to contracts in the plural.

21/6/07
LMA3333



Attaching to and forming part of Policy No:   B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No:  2

### NEW SHORT RATE CANCELLATION TABLE ENDORSEMENT

Except as stated in the Special Cancellation Clause and in consideration of the premium for which this insurance is written it is agreed that in the event of cancellation thereof by the **Parent Company** the earned premium shall be computed as follows:-

### SHORT RATE CANCELLATION TABLE

A.      For Insurances written for one year:-

| Days Insurance in force | Per cent. of One year Premium | Days Insurance in force | Per cent. of One year Premium |
|---|---|---|---|
| 1 | ...................................5 | 154 - 156 | ...............................53 |
| 2 | ...................................6 | 157 - 160 | ...............................54 |
| 3 - 4 | ...................................7 | 161 - 164 | ...............................55 |
| 5 - 6 | ...................................8 | 165 - 167 | ...............................56 |
| 7 - 8 | ...................................9 | 168 - 171 | ...............................57 |
| 9 - 10 | .................................10 | 172 - 175 | ...............................58 |
| 11 - 12 | .................................11 | 176 - 178 | ...............................59 |
| 13 - 14 | .................................12 | 179 - 182 | (6 months)...................60 |
| 15 - 16 | .................................13 | 183 - 187 | ...............................61 |
| 17 - 18 | .................................14 | 188 - 191 | ...............................62 |
| 19 - 20 | .................................15 | 192 - 196 | ...............................63 |
| 21 - 22 | .................................16 | 197 - 200 | ...............................64 |
| 23 - 25 | .................................17 | 201 - 205 | ...............................65 |
| 26 - 29 | .................................18 | 206 - 209 | ...............................66 |
| 30 - 32 | (1 month)....................19 | 210 - 214 | (7 months)...................67 |
| 33 - 36 | .................................20 | 215 - 218 | ...............................68 |
| 37 - 40 | .................................21 | 219 - 223 | ...............................69 |
| 41 - 43 | .................................22 | 224 - 228 | ...............................70 |
| 44 - 47 | .................................23 | 229 - 232 | ...............................71 |
| 48 - 51 | .................................24 | 233 - 237 | ...............................72 |
| 52 - 54 | .................................25 | 238 - 241 | ...............................73 |
| 55 - 58 | .................................26 | 242 - 246 | (8 months)...................74 |
| 59 - 62 | (2 months)..................27 | 247 - 250 | ...............................75 |
| 63 - 65 | .................................28 | 251 - 255 | ...............................76 |
| 66 - 69 | .................................29 | 256 - 260 | ...............................77 |
| 70 - 73 | .................................30 | 261 - 264 | ...............................78 |
| 74 - 76 | .................................31 | 265 - 269 | ...............................79 |
| 77 - 80 | .................................32 | 270 - 273 | (9 months)...................80 |
| 81 - 83 | .................................33 | 274 - 278 | ...............................81 |
| 84 - 87 | .................................34 | 279 - 282 | ...............................82 |
| 88 - 91 | (3 months)..................35 | 283 - 287 | ...............................83 |
| 92 - 94 | .................................36 | 288 - 291 | ...............................84 |
| 95 - 98 | .................................37 | 292 - 296 | ...............................85 |
| 99 - 102 | .................................38 | 297 - 301 | ...............................86 |
| 103 - 105 | .................................39 | 302 - 305 | (10 months).................87 |
| 106 - 109 | .................................40 | 306 - 310 | ...............................88 |
| 110 - 113 | .................................41 | 311 - 314 | ...............................89 |
| 114 - 116 | .................................42 | 315 - 319 | ...............................90 |
| 117 - 120 | .................................43 | 320 - 323 | ...............................91 |
| 121 - 124 | (4 months)..................44 | 324 - 328 | ...............................92 |
| 125 - 127 | .................................45 | 329 - 332 | ...............................93 |
| 128 - 131 | .................................46 | 333 - 337 | (11 months).................94 |
| 132 - 135 | .................................47 | 338 - 342 | ...............................95 |
| 136 - 138 | .................................48 | 343 - 346 | ...............................96 |
| 139 - 142 | .................................49 | 347 - 351 | ...............................97 |
| 143 - 146 | .................................50 | 352 - 355 | ...............................98 |
| 147 - 149 | .................................51 | 356 - 360 | ...............................99 |
| 150 - 153 | (5 months)..................52 | 361 - 365 | (12 months)...............100 |



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:             Paper Bird Inc.

B.      For insurances written for more or less than one year:-

1.   If insurance has been in force for 12 months or less, apply the standard short rate table for annual insurances to the full annual premium determined as for an insurance written for a term of one year.

2.   If insurance has been in force for more than 12 months:

a.   Determine full annual premium as for an insurance written for a term of one year.

b.   Deduct such premium from the full insurance premium, and on the remainder calculate the *pro rata* earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the insurance was originally written.

c.   Add premium produced in accordance with items (a) and (b) to obtain earned premium during full period insurance has been in force.

N.M.A. 45 (amended)



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:          Paper Bird Inc.

Endorsement No.    **3**

<u>**SPECIAL CANCELLATION CLAUSE**</u>

In consideration of the premium charged for this Policy, it is hereby understood and agreed that notwithstanding anything to the contrary in this Policy including any endorsement or amendatory thereto, in the event:

1.       the Underwriter ceases all underwriting operations; or

2.       the Underwriter is the subject of an order or resolution for winding up or formally propose a scheme of arrangement, or is placed into rehabilitation or liquidation by any state department of insurance; or

3        the Underwriter has its authority or license to carry on insurance business withdrawn; or

4        Lloyd's financial strength rating is issued below A- by A.M. Best Company or by Standard & Poor's Rating Services,

the **Parent Company** may cancel this Policy by giving notice within thirty (30) days of such event and the return premium shall be calculated on a pro rata basis to the time on the risk.  Any return of premium shall also be subject to a written full release of liability from the **Insureds**.  In the event there are any notified, reserved or paid **Claims, Investigations, Inquiries, Losses** or circumstances, return premium shall be calculated on a short rate basis pursuant to the terms of the Policy.

All other terms and conditions of this Policy remain unchanged.



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No.    **4**

## SANCTION LIMITATION AND EXCLUSION CLAUSE

No Insurer shall be deemed to provide cover and no Insurer shall be liable to pay any **Claim** or provide   any benefit hereunder to the extent that the provision of such cover, payment of such **Claim** or provision   of such benefit would expose that Insurer to any sanction, prohibition or restriction under United Nations   resolutions   or   the   trade   or   economic   sanctions,   law   or   regulations   of   the European  Union,  United   Kingdom or United States of America.

All other terms and conditions of this Policy remain unchanged



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No.    **5**

### FTX - OFFERING/LISTING OF SECURITIES EXCLUSION WITH ROADSHOW CARVEBACK

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Underwriters shall not be liable to make any payment in connection with:

1)    any **Claim**, **Investigation** or **Inquiry** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the registration and/or public sale or public listing of any equity securities issued by the **Company**, or

2)    any **Claim**, **Investigation** or **Inquiry** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving the purchase by the **Company** of securities of any entity whose securities are traded on any public stock exchange which purchase, either directly or indirectly, results in the **Company** having the right to vote for the election of a majority of such entity's directors, or

3)    any **Claim**, **Investigation** or **Inquiry** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any acquisition, merger or transaction with a Special Purpose Acquisition Company resulting in the securities of the **Company** becoming traded on any public stock exchange, or

4)    any **Claim**, **Investigation** or **Inquiry** which alleges violations of the Securities Act of 1933, the Securities and Exchange Act of 1934, or any rules or regulations promulgated thereunder; or

5)    any **Claim**, **Investigation** or **Inquiry** based upon, arising out of, directly or indirectly resulting from, or in consequence of or in any way involving any **Coin Offering**, including but not limited to:

   a)    any allegation that any whitepaper relating to the **Coin Offering**:

      (i)    contains an untrue or misleading statement of material fact, or

      (ii)    omits a material fact which should have been stated in the whitepaper or was necessary to make the statements contained in the whitepaper not misleading, or

   b)    the pre-sale of any virtual or digital tokens or coins attached to any **Coin Offering**; or

   c)    any allegation by a regulator or governmental agency such as the Securities Exchange Commission, the U.S. Department of Justice, or foreign equivalents that a **Coin Offering**:

      (i)    is an initial or secondary coin offering; or

      (ii)    involves the sale of securities; or

      (iii)    violates any federal, state, or foreign equivalent securities law, rule or regulation.

For the purpose of this Endorsement, **Coin Offering** shall mean any offer of virtual or digital tokens or coins by the **Company** to the public in exchange for consideration.



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Provided that:

1)      Exclusions 1) and 4) only shall not apply to any **Claim**, **Investigation** or **Inquiry** arising out of the sale or purchase of debt or equity securities in a transaction that is exempt from registration under the Securities Act of 1933; or

2)      Exclusions 1), 2), 3) and 4) shall not apply to any **Claim**, **Investigation** or **Inquiry** emanating out of:

    a)      the registration or filing with the Securities Exchange Commission by the **Company** of an offering memorandum or registration statement under the Securities Act of 1933, whether on Form S-1 or otherwise, or

    b)      any activity required for, or in preparation for, the **Company's** proposed registration and/or public sale or public listing of any equity securities, including any "road show", or

    c)      the **Company's** failure to conduct, or delay in conducting, the proposed registration and/or public sale or public listing of any equity securities, or

    d)      any activity required for, or in preparation for, the **Company's** proposed purchase of securities of any entity whose securities are traded on any public stock exchange or the **Company's** proposed acquisition, merger or transaction with a Special Purpose Acquisition Company,

but only where such **Claim** is made, **Investigation** is commenced or **Inquiry** is reported prior to the effective date of such sale, listing, purchase, acquisition, merger or transaction.


All other terms and conditions of this Policy remain unchanged.



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:          Paper Bird Inc.

Endorsement No.    **6**

## WEST REALM SHIRES SERVICES INC EXCLUSION

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Underwriters shall not be liable to make any payment in connection with:

1.     any **Claim** made against or brought by or on behalf of, or in the name or right of or at the direction of West Realm Shires Services Inc.; or

2.     any **Claim**, **Investigation** or **Inquiry** based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** committed or alleged to have been committed or any conduct undertaken or alleged to have been undertaken by or on behalf of West Realm Shires Services Inc.

All other terms and conditions of this Policy remain unchanged.



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No.    **7**

**<u>PREMIUM PAYMENT WARRANTY</u>**

IT IS HEREBY WARRANTED that all premium due to Underwriters under this policy is paid within 45 days from inception.

Non-receipt by Underwriters of such premium, by midnight (local standard time) on the premium due date, shall render this policy void with effect from Inception.

623AFB00082



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No.    **8**

<u>**AMENDED INSOLVENCY EXTENSION PERIOD ENDORSEMENT**</u>

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause **IX. EXTENSIONS TO THE POLICY PERIOD** B. is deleted in its entirety and replaced with the following:

B.    **Insolvency Extension Period**

In the event that during the **Policy Period** a liquidation or reorganization proceeding may be commenced by or against the **Parent Company**, the **Parent Company** may request an extension of the coverage granted by this Policy for a period of up to 72 months.

Such extension of the coverage shall only be available if:

1.    the **Parent Company** provides Underwriters with such information in connection with such liquidation or reorganization proceeding as Underwriters may deem necessary; and

2.    the **Parent Company** accepts any special terms, conditions, exclusions or additional premium charge as required by Underwriters; and

3.    Underwriters, at their sole discretion, agree to provide such coverage.


All other terms and conditions of this Policy remain unchanged.



Attaching to and forming part of Policy No:    B0146ERINT2200905

Issued to:            Paper Bird Inc.

Endorsement No.    **9**

### POLICYHOLDER DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

Coverage for acts of terrorism is already included in the policy (including any quotation for insurance) to which this notice applies. You should know that, under the policy, any losses caused by certified acts of terrorism would be partially reimbursed by the United States under a formula established by federal law.  Under this formula, the United States pays 80% of covered terrorism losses exceeding the statutorily established deductible paid by the insurer providing the coverage. However, your policy may contain other exclusions which might affect your coverage, such as exclusion for nuclear events. The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in consultation   with the Secretary of Homeland Security and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion. The Terrorism Risk Insurance Act, as amended, contains a USD100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds USD100 billion in any one calendar year.  If the aggregate insured losses for all insurers exceed USD100 billion, your coverage may be reduced.

The premium allocated for this coverage is USD1.00, part of the overall premium charged for your policy.

**Option to reject terrorism insurance coverage**

*Your policy automatically provides coverage for claims arising out of acts of terrorism as defined in the Terrorism Risk Insurance Act of 2002 at no additional cost to you. If you would prefer not to have such coverage please check the box below, sign where indicated and return this form to your insurance broker or intermediary.* **Please note that there will be no reduction in premium if terrorism coverage is removed from your policy.**

| | |
|---|---|
| | I hereby elect not to have TRIA coverage under this policy.  I understand that I will have no coverage for losses arising from certified acts of terrorism. |

Paper Bird Inc.

_____          _____

*Policyholder / Applicants Signature*                *Named Insured*

                                                            B0146ERINT2200905

_____

*Print Name*                                            *Policy Number*

_____/_____/_____

*Date*

LMA9185 (amended)

**Paragon International**
**Insurance Brokers**
**140 Leadenhall Street**
**London EC3V 4QT**

**Telephone**
+44 (0)20 7280 8200
Facsimile
+44 (0)20 7280 8270

**Website**
www.paragonbrokers.com
Email
info@paragonbrokers.com



Unique Market Reference:B0146ERINT2200905
Date:    5th August 2022

Page:  1 of 1

## Market Security:

| Signed Line % | Insurer |
| --- | --- |
| 100.00 % | Certain Lloyd's Underwriters as per the Schedule below |

Schedule of Underwriters at Lloyd's being:

| Signed Line % | Syndicate No. | Pseudonym | Syndicate Full Name |
| --- | --- | --- | --- |
| 82.00  % | 2623 | AFB | Beazley Syndicate |
| 18.00  % | 0623 | AFB | Beazley Syndicate |
| 100.00  % | | | |

Please Note

All premiums specified herein exclude U.S. State Surplus Lines Taxes, Self / Direct Procurement Taxes, Federal Excise Taxes, local Provincial Taxes, Filing Fees and other parafiscal charges unless specifically stated.

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.

**Paragon International**
**Insurance Brokers**
**140 Leadenhall Street**
**London EC3V 4QT**

**Telephone**
+44 (0)20 7280 8200
**Facsimile**
+44 (0)20 7280 8270

**Website**
www.paragonbrokers.com
**Email**
info@paragonbrokers.com



**EDGEWOOD PARTNERS INSURANCE CENTER**
One California Street
Suite 400
San Francisco
California 94111
United States of America

Contract:   B0146ERINT2200905

Date:  9th August 2022

**Insured: Paper Bird Inc.**

Further to your instructions we have effected the attached amendment to the insurance contract referenced above.

Please examine this amendment carefully and notify us immediately if it is incorrect, or does not meet your requirements.

**Duty to Disclose:**

This amendment to your insurance cover is based on the information you provided to us and on which we and the insurer(s) have relied.  If you have not provided to us all material information or you discover that the information you have provided is inaccurate, please advise us immediately in order that we may seek revalidation of terms with the insurer(s).

We take this opportunity to remind you that you have a duty to disclose all information which a) is material to the coverage requirements, b) might influence the insurer(s) in deciding whether or not to accept your business, c) might affect which terms and conditions the insurer(s) impose, or d) might affect the premium the insurer(s) charge. This duty to disclose is an ongoing responsibility for the duration of the contract and failure to make such disclosure may allow the insurer(s) to cancel the policy, avoid a claim or even avoid the contract.

**Premium Payment Terms:**

If an additional premium is payable then payment of such premium is a condition of the contract. If the insurer(s) have imposed a payment warranty you must make sure that the additional premium is paid to us early enough to give us sufficient time to pay the insurer(s).  Failure to pay the additional premium or to meet a payment warranty may enable the insurer(s) to avoid this amendment to the contract.

**Claims:**

In the event of any claim or circumstance that might lead to a claim, please follow the instructions in the original contract.   If you have any questions relating to claims or doubts as to what constitutes a circumstance then please contact Simon Witham on +44 (0)20 7280 8227 or swltham@paragonbrokers.com

Should you have any questions please feel free to contact us.

Yours sincerely,

**Director / Authorised Signatory**

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.



**PARAGON INTERNATIONAL INSURANCE BROKERS LIMITED**


**AMENDMENT TO
CONTRACT OF INSURANCE**


**Unique Market Reference:  B0146 ERINT2200905**


Thank you for choosing Paragon International Insurance Brokers Limited for your Insurance requirements.

This document contains an amendment to the terms and conditions of your Insurance. It is a legal document that you must read to ensure that you understand what is covered and what is excluded by your Insurance.

If you have any questions or concerns please contact us; we would be happy to hear from you.

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.



# Important Information
(Please Read Carefully)

## Material Facts

All material facts must be disclosed to us.  Failure to do so may affect your rights under this insurance.  A material fact is a fact likely to influence an insurer in the acceptance or assessment of this Insurance. If you are uncertain whether a fact is 'material', then for your own protection it should be disclosed to us so that we can advise you.

## Policy Terms

The coverage afforded by this insurance is subject to all the terms, conditions and exclusions contained in the original contract.  If you have any questions or concerns about this insurance, you should first contact us at the address set out below.

## Subjectivities

If this contract contains subjectivities then you must take the necessary steps to provide the information requested by insurers and / or comply with their instructions.  Failure to comply with the subjectivities may limit or restrict some, or all, of the coverage under this insurance.  In some instances insurers may be able to avoid the contract.

## Our Services

We are committed to providing you with a high quality service, which we expect to maintain throughout the duration of the policy.  In order for you to appreciate this level of service we ask that in the first instance you carefully read through this document to ensure that you understand the extent of the coverage provided, the terms, conditions and exclusions that apply. In particular please note what is required of you if and when you become aware of a claim, or a circumstance which may give rise to a claim, being made against you.

## Contact Address:

Paragon International Insurance Brokers Ltd.,

140, Leadenhall Street,

London,

EC3V 4QT

**Tel:**      020 7280 8200

**Fax:**      020 7280 8270

**Email:**    info@paragonbrokers.com

.

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.

**CONTRACT ENDORSEMENT**

**Unique Market Reference:**   B0146ERINT2200905

**Endorsement Reference:**   001

**Original Insured:**   Paper Bird Inc.


**CONTRACT CHANGES**

This contract is amended as follows:


**ENDORSEMENT
EFFECTIVE DATE:**   4 August 2022 at 12.01 a.m. Local Time at the Principal Address stated in Item A. of the Declarations.


**CONDITIONS:**   It is hereby understood and agreed that Endorsement No. 8 'Amended Insolvency Extension Period Endorsement' is deleted in its entirety and replaced with the attached.


All other terms and conditions remain unchanged.

Paragon International Insurance Brokers Limited, a Lloyd's broker, authorised and regulated by the Financial Conduct Authority.

Registered office 140 Leadenhall Street, London EC3V 4QT.  Registered number 3215272 England and Wales

Attaching to and forming part of Policy No: **B0146ERINT2200905**

Issued to:          **Paper Bird Inc.**

Endorsement No.    **8**

### AMENDED INSOLVENCY EXTENSION PERIOD ENDORSEMENT

In consideration of the premium charged for this Policy, it is hereby understood and agreed that Clause **IX. EXTENSIONS TO THE POLICY PERIOD** is amended with the addition of the following:

E.   **Insolvency Extension Period**

In the event that during the **Policy Period** a liquidation or reorganization proceeding may be commenced by or against the **Parent Company**, the **Parent Company** may request an extension of the coverage granted by this Policy for a period of up to 72 months.

Such extension of the coverage shall only be available if:

1.   the **Parent Company** provides Underwriters with such information in connection with such liquidation or reorganization proceeding as Underwriters may deem necessary; and

2.   the **Parent Company** accepts any special terms, conditions, exclusions or additional premium charge as required by Underwriters; and

3.   Underwriters, at their sole discretion, agree to provide such coverage.

All other terms and conditions of this Policy remain unchanged.

**Paragon International**
**Insurance Brokers**
**140 Leadenhall Street**
**London EC3V 4QT**

**Telephone**
**+44 (0)20 7280 8200**
**Facsimile**
**+44 (0)20 7280 8270**

**Website**
**www.paragonbrokers.com**
**Email**
**info@paragonbrokers.com**



Unique Market Reference:B0146ERINT2200905
Date:   9th August 2022

Page:  1 of 1

___

## <u>Market Security:</u>

| Signed Line % | Insurer |
| --- | --- |

| 100.00  % | Certain Lloyd's Underwriters as per the Schedule below |

Schedule of Underwriters at Lloyd's being:

| Signed Line % | Syndicate No. | Pseudonym | Syndicate Full Name |
| --- | --- | --- | --- |
| 82.00  % | 2623 | AFB | Beazley Syndicate |
| 18.00  % | 0623 | AFB | Beazley Syndicate |
| 100.00  % | | | |

<u>Please Note</u>

All premiums specified herein exclude U.S. State Surplus Lines Taxes, Self / Direct Procurement Taxes, Federal Excise Taxes, local Provincial Taxes, Filing Fees and other parafiscal charges unless specifically stated.

Authorised and Regulated by the Financial Conduct Authority.  Accredited Lloyd's Broker.
Registered in England at the above address. Company No. 3215272.
Paragon Brokers (Bermuda) Ltd. LOM Building, 27 Reid Street, Hamilton HM 11, Bermuda. Registration No. 33838.